# County of Mobile v. Powers.

*Action against County by Clerk of the City Court to recover Fees.*

1. *Fees of clerk of city court; from what fund payable.*—Section 1 and 2 of the act "To dispose of the fine and forfeiture fund of Mobile county," &c., approved December 3, 1890, (Acts 1890–91, p. 9), consolidate the fine and forfeiture and general fund of the county of Mobile, and provide that all claims, which, under the then existing law were charges upon the fine and forfeiture fund, whether then existing, or subsequently accruing should be paid from the consolidated fund. Sections 3, 4 and 5 of said act provide that all existing claims against the fine and forfeiture fund should be paid only when there is a surplus arising from the fine and forfeitures, after payment out of such moneys of the subsequent accruing claims. The clerk of the city court sues to recover fees which accrued after the passage of this act, and which, without the act, would have been proper claims against the fine and forfeiture fund. *Held:* Plaintiff's claim is payable out of the consolidated fund, without regard to the existence therein of moneys arising from fines and forfeitures.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The appellee, John F. Powers, brought the present action against the County of Mobile to recover $485, as fees due to him for services rendered as clerk of the city court of Mobile, in certain criminal cases, which were *nol prossed,* or where the defendant was acquitted, or the indictment quashed. The suit is brought under the act "To dispose of the fine and forfeiture fund in Mobile county, and to provide for the payment of all claims

which are, by law, a charge against the said fund," approved December 3, 1890.—Acts 1890–91, p. 9.

The plaintiff in his complaint claims the amount sued for as due him for services rendered at the November criminal term of the city court of Mobile for 1892, and avers that the plaintiff was, at that time, the duly appointed and qualified clerk of said court, and performed such services at the instance of the solicitor in cases where indictments had been found, and for which services the plaintiff was entitled to the compensation charged by him under section 4869 of the Code; that the defendants, in each of the cases in which such services were rendered, were acquitted, or the cases *nol prossed*, or the indictments quashed; that after the expiration of the term, and on the 13th day of February, 1893, he made up and presented an itemized account of the several services so rendered by him against the county of Mobile; that he duly verified and presented said claim, and requested registration in its proper order, and, then, within twelve months from the date of its accrual, presented it to the County Commissioners of said county, and that it was by them disallowed before the commencement of the plaintiff's suit. Several demurrers were filed to this complaint and overruled, and the county then pleaded, first, the general issue; and, second, that the act under which the claim was made is unconstitutional, because it impairs the obligation of contracts.

The cause was tried upon the following agreed statement of facts: "John F. Powers is now, and has been for many years, the duly appointed and qualified clerk of the city court of Mobile, and was such and so acted during the November term, 1892, of said court, and then and there, in the performance of such duties as such clerk, the said John F. Powers did, at the instance of the solicitor of Mobile county, render certain services in a number of criminal cases pending in said court during said term, wherein criminal indictments were presented by the State of Alabama against several persons, and for such services the plaintiff was, under the provisions of section 4869 of the Criminal Code of Alabama, entitled to receive certain fees, aggregating the sum of four hundred and eighty-five dollars; and it is further admitted that the defendants in each of said causes were

acquitted, or the cases were *nol prossed*, or the indictments were quashed; and it is further admitted that after the expiration of said term, and on, to-wit, the 13th day of February, 1893, the said plaintiff made up and presented in due form an itemized account of the several services rendered by him as aforesaid during said term against the county of Mobile, which said account was duly sworn to as required by law, and was in due time presented by the plaintiff for registration in its proper order, and said account was, within twelve months after the same accrued, duly presented to the County Commissioners of Mobile county, and was by said County Commissioners duly passed upon and disallowed as a claim against the county of Mobile before the commencement of this suit, holding that said claim was payable only out of the fine and forfeiture fund of said county when there should be a sufficient amount in said fund to pay the same, after the payment of State witnesses or other claims that might be entitled to a preference. It is further agreed that on December 3, 1890, the date of the approval of the act entitled 'An act to dispose of the fine and forfeiture fund in Mobile county, and to provide for the payment of all claims which are by law a charge against said fund,' there was a certain amount of money in the fine and forfeiture fund in Mobile county and there was also at said date claims belonging to former sheriffs of Mobile county and also claims belonging to the clerk of the city court of Mobile all properly verified and registered with the treasurer of Mobile county, all of which claims were by law payable out of said fine and forfeiture fund and none of said claims have been paid. The said claims referred to as claims registered against, and payable out of, said fine and forfeiture fund at the time of the passage of said act were for services rendered by such sheriffs and clerk in criminal cases tried in the city court of Mobile wherein the defendants were acquitted, or the cases *nol prossed* or the indictments quashed, prior to December 3d, 1890." Upon these facts the court, hearing the cause without the intervention of a jury, rendered judgment for the plaintiff. The County of Mobile prosecutes this appeal, and assigns as error the rendition of said judgment.

14

W. S. ANDERSON, for appellant.—The purpose of the act considered in this case, was to provide for the payment of new claims against the fine and forfeiture fund, at the cost of the old claims; these old claims never to be paid unless there is a surplus after the new ones are paid. The burden is on the appellee in this case to show that his claim is payable out of the general fund of the county, and not, as we contend, out of the fine and forfeiture fund only. Unless the act "To dispose of the fine and forfeiture fund in Mobile county," &c., makes it payable out of the general fund, his position can not be maintained. And while I assert that the act is unconstitutional, the defense is equally perfect if the act is valid, because the act by its very terms provides for the payment of the appellee's claim out of the fine and forfeiture fund, and no where intimates or suggests its payment from any other source. The act no where creates a liability on the county for claims chargeable by law against the fine and forfeiture fund. It is evident such liability did not exist prior to the passage of the act. "It is only claims which the commissioners court is bound to provide means of payment, and which are chargeable on the general treasury of the county, that must be presented to and allowed by the commissioners court before the county treasurer can pay them.—*Palmer v. Fitts*, 51 Ala. 489; *State v. Stone*, 69 Ala. 208; *Joseph v. Randolph*, 71 Ala. 499; *Herr v. Seymour*, 76 Ala. 273.

GREGORY L. & H. T. SMITH, *contra.*—The construction put upon the act of 1890 by the frame of the complaint, and also by the judgment of the city court, is its true construction. Prior to February 10, 1887, the claims of officers in the county of Mobile were, with one exception, governed by section 4895 of the Criminal Code.—*Stone v. Ames*, 91 Ala. 646.

By the act of February 10, 1887, (Acts 1886-87, p. 773), certain priorities of payment were established between the several parties having claims payable out of the fine and forfeiture fund, but in other respects the provisions of the Code remained unchanged. The clear intent of the act of December 3, 1890, (Acts 1890-91, p. 9), was to entirely abolish the fine and forfeiture fund as soon as the same could be done, without burdening the county of Mobile with the payment of the already accumulated

claims against it.    The act does not purport to be an act to regulate the disposition of the fine and forfeiture fund, nor to amend any act previously regulating such disposition; it purports to be "An act to dispose of the fine and forfeiture fund of Mobile county, and to provide for the payment of all claims which are by law a charge against said fund."    The body of the act pursues the plain declaration of the purpose set out in its title; by the first section of the act, the fine and forfeiture fund is disposed of by causing it to be covered and paid into the county treasury of Mobile, to be used and treated in all respects as the fund of Mobile county.    This effectually disposes of the fund.

The second paragraph of the act provides, that all claims now existing or which may hereafter accrue that are by law charged against the fine and forfeiture fund shall be paid out of the treasury of Mobile county.    This provides "for the payment of all claims which are by law charged against said fund."    If there were no further or other provisions in the act, there could be no possible question but that the intent of the legislature was that all funds heretofore belonging to the fine and forfeiture fund should become an inseparable portion of the general funds of Mobile county, and all claims that had heretofore been charges upon the fine and forfeiture fund would be payable, without restriction or limitation, out of the general funds of the county.    There are in fact, no provisions whatever, subsequent to the two hereinabove referred to, which relate or refer to any claim whatever other than those that existed at the date of the enactment of said act of February 10, 1887.    As to all subsequently accruing claims, the first and second sections of the statute are complete and without modification by any of the subsequent sections, and such claims are therefore, by the plain terms of the statute, payable without limitation, restriction or conditions out of the general fund.

The third section of the act limits the time when existing claims shall be paid out of the county treasury; but has no reference to claims accruing in the future. The fourth section of the act provides the method of keeping the books of the treasurer so that he may determine when the existing claims are payable, and the fifth section provides for priority between different classes of existing claim holders.

By their very terms, sections three, four and five, are temporary in their operation, and cease to exist when all claims that existed at the time of the passage of the act have been paid, while sections one and two are permanent in their nature and operative for all time. If the act was so constructed as to make accruing claims payable out of the fine and forfeiture fund, then, as soon as a sufficient fund was realized to pay off existing claims, the treasurer would, under the fourth section of the act, cease keeping a separate account of the fine and forfeiture fund, and it would thereafter be impossible to know whether such future claims were payable or not.

The construction attempted to be put by the county commissioners upon the act of 1890 renders it nugatory.

HEAD, J.—The controversy brings us to construe the act, "To dispose of the fine and forfeiture fund in Mobile county, and to provide for the payment of all claims, which are by law a charge against said fund."—Acts 1890-91, p. 9. The precise question presented is whether a claim which accrued after the passage of this act, in favor of the clerk of the city court of Mobile, which, without the act, would have been a proper claim against the fine and forfeiture fund, is now, by virtue of the act, payable out of the general treasury, without regard to whether there are funds in the treasury to cover it, arising from fines and forfeitures. If the act stopped with sections 1 and 2, no question could arise about it. They, in plain terms, abolish all distinction between the fine and forfeiture and general funds of the county, consolidate the two, and provide for the payment out of the consolidated fund of all claims, whether then existing or subsequently accruing, which, under existing law, were charges upon the fine and forfeiture fund. The controversy grows out of sections 3, 4 and 5 of the act.

When we use the term, "existing claims," in this opinion, we will be understood to mean claims outstanding against the fine and forfeiture fund at the time of the passage of the act; and by "subsequently accruing claims," we will mean claims accruing subsequently thereto, which, under the former law, would have been charges upon the fine and forfeiture fund.

Sections 3 4 and 5, when carefully read, are seen to relate alone to the existing claims ; and the sole purpose

[County of Mobile v. Powers.]

of their insertion was to postpone the payment of such existing claims, in a way therein made known, operating, in effect, a qualification or proviso to the general provision of section 2, that all claims, existing and subsequently accruing, shall be paid out of the general treasury. To this end, the following provisional scheme and plan were adopted, viz. : That the existing claims shall be paid only when there shall be a surplus in the treasury of moneys arising from fines and forfeitures, after payment out of such moneys of the subsequently accruing claims; and when there shall be such a surplus, or surpluses, arising from time to time, then the existing claims shall be paid therefrom according to specified priorities, until all shall have been paid. To facilitate this plan, it is provided (notwithstanding by virtue of the consolidation of the two funds under the first section there is but one fund in the treasury). that the treasurer shall keep a separate account, showing all moneys received into the treasury arising from fines and forfeitures, and all moneys paid out on the subsequently accruing claims, so as to be able at any time to ascertain when there is such a surplus in the treasury, until all the existing claims shall have been paid. The salary of the judge of the city court, formerly a charge on the fine and forfeiture fund, shall not be considered in ascertaining the surpluses. All existing claims shall be registered within three months after the passage of the act, or they lose their priority of payment. This is a plain statement of the provisions of the act, and their meaning appears to us clear. Their effect is that all claims, whenever contracted, are payable out of the general consolidated fund, for there is but the one fund ; there is no separation of the moneys in the treasury ; but as to the existing claims, they shall be paid, not generally, like other claims, but on a contingency, which is, that there is in the treasury an excess of moneys coming in from fines and forfeitures, over the amounts paid out on subsequently accruing claims; and then only to the extent of such excess—the excess to be ascertained by the separate accounts the treasurer is required to keep. Whenever a sufficiency of these excesses shall have arisen in the treasury to cover all the existing claims, then sections 3, 4 and 5 of the act will have spent their force, and sections 1 and 2 will stand as the unqualified, enduring law

for the government of the treasury. Now, it seems from all this too clear for doubt, that there was no intention to place any qualification or limitation whatever upon the payment, from the general consolidated treasury, of any claims as directed by section 2 of the act, except the existing claims against the fine and forfeiture fund. Argument to the contrary is predicable alone of that expression in section 3, that the existing claims shall be paid only when there shall be a surplus in the county treasury arising from said fund (fines and forfeitures) *"after the payments out of the moneys coming from said fund"* of the subsequently accruing claims—the contentention being that subsequently accruing claims can only be paid when there are moneys in the treasury arising from fines and forfeitures sufficient to cover them. Construing the expression, above quoted and emphasized, in connection with section 2, and seeing how carefully, and with what minuteness of detail, the limitation upon the payment of existing claims is defined, and seeing the expression used in the frame-work of that limitation, we do not hesitate to declare that it does not mean literally that subsequently accruing claims shall be paid only out of fine and forfeiture moneys actually in the treasury. It means simply that whenever it is shown by the separate account the treasurer is required to keep, that more funds have come in from fines and forfeitures than the amount which has been paid out on subsequently accruing claims, then the amount so paid out shall be referable to the funds so received, as a means of ascertaining a surplus, to the extent of which the existing claims may be paid. The postponement of payment of the existing claims was the central thought in the legislative mind, and the terms used were but the formulation of a plan to carry that thought into effect. There was manifestly no purpose to otherwise limit section 2. We hold that plaintiff's being a subsequently accruing claim, he was entitled to have it allowed and paid out of the general treasury, without regard to the existence therein of moneys arising from fines and forfeitures.

Affirmed.